[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
The parties intermarried on December 30, 1979 at Las Vegas, Nevada. They have resided continuously in this state since 1985. There are three minor children issue of the marriage; Kaspar Heinrici born June 19, 1979; Alexa Heinrici born July 22, 1981; August Heinrici born June 13, 1983.
The evidence presented at trial has clearly established the allegation that the marriage has irretrievably broken down. Judgment may enter dissolving the marriage on that ground.
The court has carefully considered the criteria set forth in 46b-56, 46b-82 and 46b-84 of the Connecticut General CT Page 2910 Statutes in reaching the decisions reflected in the orders that follow.
The husband is the owner of a fine arts silk screen printing company called "Studio Heinrici, Ltd." The defendant came to New York in 1970 to start his own business. He had previously started his own business in Vienna, Austria in 1969. There was a cursory mention of the defendant's studio in Vienna. The fiscal year of the business was on a February to January basis while the parties used a January to January for their personal fiscal year for tax purposes. As a sole proprietorship business, the defendant ran all of the families personal expenses through the business from club membership to florists, to Limo's. Up until the start of the dissolution the parties had an expensive life style. The parties summered in the Hamptons, skied in Vermont and Sun Valley in the Winter and took several trips to Europe. All of these expenses were paid through the business. Having had some lean years at the start of his business, the defendant case into his own in the latter part of the 1980's. The defendant's gross income for the period February 1987 to January 1988 was $592,000 — out of which the parties lived, paid personal and business expenses, and paid -federal taxes and salaries. The defendant also set up a loan account with his company, enabling him to withdraw funds, non taxable to him when the loan was repaid. The loans to the company came from a variety of sources, — the profits on the sale of marital assets, the cashing in of a life insurance policy (paid for by the company), and the home equity loan on the marital residence.
Immediately prior to the start of this action, the defendant was depositing $7,000 a month into the plaintiff's account to enable her to run the household.
As indicated, up to the institution of the action, the parties lived well, and kept current in their bills, in particular their mortgages. After the commencement of this action, the funds appeared to dry up. The health insurance lapsed, and the mortgages fell behind, among others. The defendant, however, continued with his champagne tastes (Plaintiff's Exhibit G) and had funds available to purchase expensive jewelry for his present girlfriend in addition to a trip to California.
There is no question that any monies for this marriage came from the defendant's profession and the proceeds from the sale of the several properties owned by the parties during the course of the marriage. The plaintiff remained at home caring for the three minor children who are now aged 11, 9 and 7. In addition, however, the plaintiff was supportive of her husband's business undertakings and assisted greatly in the renovation CT Page 2911 work of the husband's lofts, turning bare lofts into attractive and inhabitable living and working areas. The plaintiff also took a major part in the renovation of the Hampton homes and the marital home in New Canaan.
Both parties have had a share in contributing to the break down of this marriage. Certainly, the wife's dalliance with a teenager, 10 years her junior did not help a marriage already shaky. The plaintiff also kept a diary recording her inner-most thoughts and growing unhappiness with the marriage.
The plaintiff was unable to cope with the defendant's obsession with sex (the defendant kept a diary to record his satisfaction with his wife's sexual performance) and the physical and verbal abuse.
Unfortunately, the parties were unable to resolve their marital difficulties even with the assistance of counseling. The evidence presented indicates that the greater fault for the cause of the break down must be attributed to the defendant.
The court finds that the defendant's total compensation package for fiscal year 1989 (February 1988 to January 31, 1989) was $242,852. This figure includes all of the parties personal expenses including travel, clothing, medical, credit card payments, New Canaan home expenses and attorneys' fees. The company's business account was used as the parties personal checking account.
The defendant's total compensation package for fiscal year 1990 (February 1989 to January 31, 1990) was $199,686. Again, this figure included business expenses and all personal expenses, including the interest expense of approximately $9,535 on the home equity loan on the marital home. In March 1989 the defendant cashed in a life insurance policy (paid for by the company), for $60,000. Forty thousand of this amount was posted as income and $20,000 was a loan to the company. The loan pay-back to the defendant, will be a tax free transaction. Further income came into the business from the home equity loan and a money market account.
The defendant's total compensation package for the period January 1, 1990 to July 31, 1990 was computed by the plaintiff's expert as $132,990. This figure includes $65,000 in personal expenses paid through the company, a salary to the defendant and a pay-back to the defendant on the loan accounts. (Defendant's Exhibit 14) In addition to any salary paid to the defendant, the company was also paying the personal and living expenses of the parties ranging from $28,000 to $65,000. The business account also paid for the leasing of the defendant's BMW motor vehicle. CT Page 2912
No useful purpose would be served by a review of all the evidence and testimony presented in this matter including, the involvement with drugs, preparation and use of non filing tax returns, the removal, return and sale of art work and furniture, and claimed infidelities on both sides. The parties were at odds with each other over everything and somewhere in between lies the truth.
The following orders shall enter:
Real Estate
The marital home located at 105 Thayer Pond Road, New Canaan shall be transferred forthwith by the defendant to the plaintiff. The plaintiff shall be entitled to retain all of the furnishings, and furniture and art work presently at the marital residence. The plaintiff shall be responsible for the mortgages on the real estate and shall hold the defendant harmless from any liability thereon.
Custody and Visitation
The three minor children are aged 11, 9 and 7. The plaintiff has requested sole custody and the defendant has requested joint custody. Both parents appear to be capable, loving and caring parents. The defendant had the three children with him for a substantial period of time this summer, without incident. Both parents are concerned about the welfare of their children.
However, in weighing the pros and cons of sole custody versus joint custody, the court has concluded that it would be in the best interests of the minor children for the plaintiff to be awarded sole custody and it is so ordered. The parties are still bitter and angry with each other and at this time the parties would not be able to work in harmony, together, for the children's best interest. The minor children are at an age when stability and firmness and continuity are essential to their future growth.
The defendant shall have liberal and reasonable visitation with the minor children which shall not be less than:
1. Every third weekend from Saturday at 10:00 a.m. through Sunday at 8:00 p.m. The defendant shall be responsible for the pick up and delivery of the children, at their home, unless the parties agree otherwise for their mutual convenience;
2. The defendant shall have five week visitation during CT Page 2913 the summer;
3. The defendant shall have one-half of the Christmas school vacation;
4. The parties shall alternate the Easter vacation with the defendant to have the children in the odd numbered years, unless the parties agree otherwise for their mutual convenience;
5. Such other holidays and times as the parties shall mutually agree upon.
If the parties are unable to agree on a further visitation arrangement, they shall report to the Family Relations Division for mediation. If this fails, the court will enter orders concerning visitation after holding a hearing on the matter.
The defendant shall have access to all school and medical records of the children.
The defendant shall have reasonable telephone access to the children; the children shall have telephone access to the plaintiff when they are with the defendant.
The plaintiff is strongly urged to confer and consult with the defendant concerning major medical and educational matters with respect to the minor children in the future.
Child Support
1. Commencing November 1, 1990 the defendant shall pay to the plaintiff as child support, the sum of $1,110 per month per child, until each child shall attain the age of 18, become emancipated or die, whichever shall first occur.
Medical Benefits
1. The defendant shall provide and maintain medical insurance for the benefit of the minor children. The defendant shall be responsible for 80% of all unreimbursed medical, dental and orthodontia expenses of the minor children and the plaintiff shall be responsible for 20% of such unreimbursed expense.
2. The defendant shall provide and maintain health insurance for the plaintiff according to the COBRA provisions for a period not to exceed 36 months.
Alimony
1. Commencing November 1, 1990 the defendant, during his CT Page 2914 lifetime shall pay to the plaintiff as periodic alimony the sum of $2,200 per month through November 1997, or until the wife's remarriage, death, or cohabitation as defined by statute, whichever event shall first occur.
2. By way of further alimony, the plaintiff is awarded lump sum alimony in the amount of $100,000 to be paid by the defendant within 90 days of date.
Arrearages
1. The parties were in dispute over the pendente lite order of unallocated alimony and support for the period March through June. The pendente lite order was $7,500 per month unallocated alimony and child support. Evidence was presented concerning the amounts paid by the defendant and credits were agreed to by the parties. For the period in question, the defendant should have paid a total of $30,000. The court finds that the defendant is entitled to a credit of $22,163 and thus, is in arrears for this period in the amount of $7,837. The wife shall pay one-half of the disputed amount of the American Express bill, that is $680. The defendant shall also pay one-half of the disputed American Express bill, but that amount, $680, is already included in his credit of $22,163.
2. The pendente lite order of $7,500 per month was in effect for the months of July, August and September 1990. The court finds the following arrearages:
 July arrears $4,500 August arrears 1,000 September arrears 7,500
Total through September 30th $13,000
 On September 12th the defendant paid $ 7,500
 Balance due on arrears through September 30th $ 5,500
3. In addition, the defendant will owe $7,500 for the month of October 1990 if not paid by October 10th.
4. The court finds the total arrearages as follows:
 through June (as set forth above) $ 7,837 due through September 5,500 due CT Page 2915 October 1990 7,500 due (if no payments made)
Total arrearage $20,837
5. It is ordered that the total arrearage shall be paid forthwith.
Art Work
Much testimony was presented concerning the parties art works, the defendant claims to have sold some of the art prints he removed from the home. These prints were sold for less than full value according to the testimony of the art appraiser. Further, some of the art work which the defendant claims he sold (but does not recall to whom) was ordered by the court to be returned to the plaintiff.
In October 1989 the defendant brought some of his art work from his studio in Vienna to this country.
The defendant acknowledges he sold certain portfolio's (Defendant's Exhibit 13) for $70,000 prior to July 31, 1990.
The following orders shall enter:
1. The defendant shall return to the plaintiff the Warhol — Marilyn Monroe art work and the Jasper Johns painting with 2 Balls within three weeks of date or the defendant shall pay to the plaintiff the sum of $45,000 which is a little less than their approximate appraised value.
2. All prints assigned to the children presently in the possession of the defendant, shall be returned forthwith to the plaintiff and held for the benefit of the children.
3. All prints signed to "Betsi" presently in the possession of the defendant, shall be returned forthwith to the plaintiff.
4. The defendant shall return to the plaintiff the following art works that were formerly housed at the marital home:
 a) one of the signed Andy Warhol Campbell's Soup Cans, the defendant's choice; b) 1 Robert Notken "Pink Painting" c) 1 Richard Hamilton (Hambleton) d) 1 Malcolm Morley e) 1 "Ladies Bathing" — Lithograph
CT Page 2916
5. The remaining art work in the defendant's possession shall remain his sole property and the remaining art work in the plaintiff's possession shall remain her sole property.
Attorney's Fees and Experts Fees
1. The plaintiff was awarded counsel fees in the amount of $2,000 on July 2, 1990 (Novack, J.) in connection with a pendente lite hearing on contempt. The pendente lite order of $2,000 counsel fees is made an order of this court.
2. In addition, the court orders that the defendant shall pay to the plaintiff as a contribution towards her attorney's fees the sum of $10,000 (in addition to the $2,000 previously awarded)
3. The defendant is ordered to pay $9,000 to the plaintiff toward the cost of the accountant, Edward M. Axelrod.
4. The defendant is ordered to pay the entire fee of the art appraiser, Paul McCarron.
Miscellaneous
1. The defendant shall transfer the title of the Porsche motor vehicle to the plaintiff. The plaintiff shall be responsible for the balance due on the car loan.
2. Unless otherwise disposed of in this memorandum, each party shall retain whatever personal property and art work that is presently in their respective possession.
3. The defendant shall be solely entitled to his business — "Studio Heinrici, Ltd." and the plaintiff shall have no claim to the business.
Life Insurance
1. The defendant shall provide and maintain $250,000 in life insurance for the benefit of the three minor children, for so long as the defendant has an obligation for child support.
2. The defendant shall provide and maintain $150,000 in life insurance for the benefit of the plaintiff for so long as the defendant has an obligation for alimony.
3. Said insurance provisions shall be subject to modification. CT Page 2917
A contingent wage execution is ordered.
COPPETO, J.